IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| AUSTIN D. MARTIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SCOTT NAGO, *personally and in his official capacity as Chief Elections Officer for the Office Of Elections, State of Hawaii*,<br><br>　　　　Defendant. | Case No. 22-cv-00460-DKW-WRP<br><br>**ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYING FEES OR COSTS, AND (2) GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND** |

In October 2022, Plaintiff Austin D. Martin filed a pro se Complaint and an application to proceed without prepaying fees or costs (IFP Application). In the Complaint, Martin seeks declaratory relief against Defendant Scott Nago, in his personal and official capacity as Hawaiʻi's Chief Elections Officer, for allegedly "engaging in a pattern of acts and omissions in an ongoing campaign of willful suppression to obfuscate reports of misconduct, system tampering, and irregularities from Election Observers and other Official Election Volunteers, pertaining to County of Hawaii employees, Office of Elections employees and other state vendor employees." Dkt. No. 1 at 2.

On November 21, 2022, Nago moved to dismiss the Complaint with prejudice or, alternatively, for summary judgment (the motion). Dkt. No. 6. Among other things, Nago argues that the claims against him in his official capacity are barred by the doctrine of sovereign immunity and the claims against him in his personal capacity fail to state a claim for relief. Martin opposes the motion, Dkt. No. 9, and Nago has filed a reply, Dkt. No. 10.

First, for the reasons set forth below, the Court GRANTS Martin's IFP Application because he has shown an entitlement to proceed without prepaying fees or costs in this case. Second, also for the reasons set forth below, the Court agrees with Nago that the claims against him must be dismissed. However, as explained below, the claims against Nago in his personal capacity are dismissed with leave to amend. Martin may also amend the complaint to name additional defendants identified in his response to the motion, limited to the extent set forth below.

## STANDARD OF REVIEW

I. **IFP Application**

Federal courts can authorize the commencement of any suit without prepayment of fees or security by a person who submits an affidavit that demonstrates an inability to pay. *See* 28 U.S.C. § 1915(a)(1). While

Section 1915(a) does not require a litigant to demonstrate absolute destitution, *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948), the applicant must nonetheless show that he is "unable to pay such fees or give security therefor," 28 U.S.C. § 1915(a).

## II.   Motion to Dismiss

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id*.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S.

at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id*. at 679.

### III. Pro Se Status

Because Martin is proceeding pro se, the Court liberally construes the Complaint. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). However, the Court cannot act as counsel for a pro se litigant, such as by supplying the essential elements of a claim. *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

"Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). A court, however, may deny leave to amend where, *inter alia*, further amendment would be futile. *E.g.*, *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## DISCUSSION

A. **IFP Application**

In the IFP Application, Martin states that he is self-employed and, in the past 12 months, his total income from "all sources" is "consistently lower than $1,700 per month[.]" Dkt. No. 3 at 1. He further states that he has $2 in a checking or savings account, owns real property with an assessed value of $37,000, and owns a car worth roughly $4,000. Martin also states that he has regular monthly expenses of approximately $650 and three minor dependents. In light of these figures, Martin's income falls below the poverty threshold identified by the Department of Health and Human Services' ("HHS") 2023 Poverty Guidelines for an individual with three dependents. *See* HHS Poverty Guidelines, available at: https://aspe.hhs.gov/poverty-guidelines. In addition, Martin has insufficient liquid assets to provide security for the $400 filing fee while still affording the necessities of life. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015).

As a result, the Court GRANTS the IFP Application, Dkt. No. 3.

B. **Motion to Dismiss**

Nago argues that both the official and personal capacity claims against him should be dismissed. The Court addresses each type of claim in turn below.

1. **Official Capacity Claims**

According to Martin, the "point" of his Complaint is to obtain a declaration that Nago engaged in "acts or omissions with the effect of suppressing and/or obfuscating Election Observer reports which were of a substantive nature, and/or was engaged in a pattern of nonfeasance, with intention." Dkt. No. 9 at 4; Dkt. No. 1 at 4. Nago argues that, to the extent this claim is asserted against him in his official capacity, it is barred by the doctrine of sovereign immunity because he is an officer of the State of Hawai'i. For the reasons set forth below, the Court agrees.

Principally, the U.S. Supreme Court has explained that state officials sued in their official capacities are generally entitled to immunity under the Eleventh Amendment. *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Here, Martin has, in part, sued Nago in his official capacity as an officer of the State of Hawai'i – specifically, in Nago's capacity as the Chief Election Officer of the State Office of Elections − and, thus, *generally*, Nago is entitled to Eleventh Amendment immunity with respect to any such claim. *See id*.

There is, however, an exception to the general rule when an official is sued for prospective injunctive relief. *Flint*, 488 F.3d at 825; *Ex Parte Young*, 209 U.S.

123, 155-156 (1908). Nonetheless, here, Martin does *not* seek prospective injunctive or declaratory relief. Rather, he seeks a declaration about events that have already taken place − in Summer 2022. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (explaining that the exception under *Ex Parte Young* requires an "ongoing violation of federal law") (quotations omitted). Martin does not contend otherwise. Instead, he merely argues that Nago's reliance on sovereign immunity is "scandalous" and not "proper." Dkt. No. 9 at 8.[1] The Court does not comprehend why, though, given that it appears to be a routine application of the doctrine under the circumstances.

      Therefore, the Court GRANTS the motion to dismiss with respect to the official capacity claims against Nago. Further, in light of the discussion above, dismissal of those claims is *without* leave to amend because amendment would be futile. Notably, as explained, Martin states that the "point" of this case is to obtain declaratory relief with respect to an event that has already taken place and, thus, does not fit within the limited exception of *Ex Parte Young*.

---

[1] For example, Martin contends that sovereign immunity should not apply because Nago allegedly engaged in "bad faith…." Dkt. No. 9 at 7. There is no exception to sovereign immunity, however, for claims of bad faith.

## 2. **Personal Capacity Claims**

The Eleventh Amendment does not bar suits against a state official in his personal capacity. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). Therefore, instead of relying on the Eleventh Amendment, Nago, instead, argues that any claim against him in his personal capacity should be dismissed for failure to state a claim. Dkt. No. 6-1 at 13. For the reasons set forth below, the Court agrees.

To establish personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Hafer*, 502 U.S. at 25 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Here, however, Martin has not identified any federal right that has allegedly been violated.[2] Specifically, in the Complaint, it is alleged that Nago engaged in an "ongoing campaign of willful suppression to obfuscate reports of misconduct, system tampering, and irregularities from Election Observers and other Official Election Volunteers…." Dkt. No. 1 at 2. It is also alleged that Martin was removed from his position as an election observer in 2022, with Nago "publicly

---

[2]In the Complaint, Martin states that this action is brought under 28 U.S.C. Section 2201 and Federal Rule of Civil Procedure 57−in other words, the Declaratory Judgment Act. However, "[t]he Declaratory Judgment Act…alone does not provide a court with jurisdiction." *California v. Texas*, 141 S.Ct. 2104, 2115 (2021). Liberally construing the allegations of the Complaint, the Court presumes for present purposes that the Complaint is brought under 42 U.S.C. Section 1983 (Section 1983) for an alleged deprivation of Martin's civil rights. To the extent this was not Martin's intent, he may clarify the same in any amended complaint he may file to the extent permitted below.

smear[ing]" him. *Id*. at 2-3. At no point, however, does Martin allege or explain how his federal rights were violated by Nago's alleged conduct. In fact, neither the Complaint nor Martin's response to the motion to dismiss even identify a federal right at issue here.[3] Therefore, because the Court will not speculate on the federal right Martin may believe has been violated, the personal capacity claims against Nago must be dismissed. However, because it is possible for Martin to correct the deficiency highlighted above, dismissal of the personal capacity claim(s) against Nago is with leave to amend.

### 3. Additional Parties

In his response to the motion to dismiss, Martin asks for permission to join additional parties−specifically, four state officials employed by the Office of the Hawaiʻi Attorney General and a county clerk for the County of Hawaiʻi. Dkt. No. 9 at 16. It appears that Martin wishes to do so in order to name those individuals as defendants in both their official and personal capacities. *Id*. Because the Court is granting leave to amend the claims against Nago in his personal capacity, the Court will also grant leave to file an amended complaint that includes additional

---

[3]In his response to the motion to dismiss, Martin appears to contend that the Complaint "alleg[es] fraud in connection with an election by officials via an unbroken pattern of acts, errors, and omissions." Dkt. No. 9 at 5. However, even if that is the thrust of the Complaint, it fails to identify any *federal* right that has been violated here, as fraud generally is a state claim appropriate for state court and, absent more, does not afford federal court jurisdiction over Martin's claims.

defendants, should Martin choose to do so.  The Court reminds Martin, however, that the rulings and guidance set forth herein apply equally to any new defendants he may wish to add.  Specifically, any personal capacity claim against an officer of the State of Hawaiʻi or the county clerk for the County of Hawaiʻi, at a bare minimum, must allege the deprivation of a federal right by each additional defendant, describe the conduct of each such Defendant, and tie that conduct to the violation of the right Martin believes was violated.  Martin should also keep in mind that with respect to any official capacity claim he may wish to bring against an officer of the State of Hawaiʻi, such as the four officials of the State Attorney General's office, sovereign immunity may bar any such claim, just as it does with the official capacity claims against Nago.

Finally, any official capacity claim against the county clerk for the County of Hawaiʻi is properly construed as one against the county itself.  *See Pistor v. Garcia*, 791 F.3d 1104, 1112 (9th Cir. 2015) ("As a general matter, individual or 'personal capacity suits seek to impose personal liability upon a government official for wrongful actions he takes under color of law,' and that were taken in the course of his official duties.  By contrast, official capacity suits ultimately seek to hold the entity of which the officer is an agent liable, rather than the official himself: they 'generally represent merely another way of pleading an action against an entity of

which an officer is an agent.'") (quoting *Kentucky v. Graham*, 473 U.S 159, 165-166 (1985)) (citations, ellipsis, and internal quotation marks omitted).  As a result, should Martin wish to allege such an official capacity claim, he must allege that an official or unofficial policy or custom of the county caused a county employee to commit an alleged constitutional deprivation.  *See Monell v. Dep't of Soc. Services of the City of New York*, 436 U.S. 658, 690-691, 694 (1978).[4]  Thus far, the Complaint does not come close to doing so.

## CONCLUSION

For the reasons set forth herein, the motion to dismiss, Dkt. No. 6, is GRANTED.  Dismissal is without leave to amend any official capacity claim against Defendant Nago.  Dismissal is with leave to amend any personal capacity claim against Nago and/or to add any additional defendant(s).  Martin may have until February 16, 2023 to file an amended complaint.  **Should Martin fail to file an amended complaint by February 16, 2023, this case will be dismissed for the reasons set forth herein.**

---

[4]At the very end of his response to the motion to dismiss, in a single sentence, Martin states that "a substantial conflict of interest exists between" him and the undersigned.  Dkt. No. 9 at 16.  Martin, however, does not identify the alleged conflict, and the undersigned is not aware of any such conflict.  To the extent Martin may believe that a ruling adverse to him in another proceeding before the undersigned represents a "conflict of interest", he is mistaken.  *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

The IFP Application, Dkt. No. 3, is GRANTED.

IT IS SO ORDERED.

Dated: January 26, 2023 at Honolulu, Hawaiʻi.

Derrick K. Watson
Chief United States District Judge

*Austin D. Martin v. Scott Nago*; Civil No. 22-00460 DKW-WRP; **ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYING FEES OR COSTS, AND (2) GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**